**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DONOVAN A. LEAMY | : | |
| | : | |
| Appellant | : | No. 1140 EDA 2021 |

Appeal from the PCRA Order Entered April 29, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0008236-2013,
CP-51-MC-0015188-2013

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED MAY 18, 2022**

Appellant Donovan A. Leamy, appeals from the order entered in the Philadelphia County Court of Common Pleas, dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The PCRA court set forth the relevant facts and procedural history of this case as follows.

> Tyree Gibbons…testified that on the afternoon of April 18, 2013, he got into a fist fight with Appellant outside a corner store at the corner of Vernon Road and Fayette Street in the Mt. Airy section of Philadelphia after Appellant complained that Gibbons had been driving too fast.  (N.T. Trial, 4/13/15, at 18-20).  Gibbons recognized Appellant, who has a large tattoo in the middle of his forehead and by the sides of his eyes, as a member of a group called "Splash Life."  Gibbons told police that he often saw Appellant and other members of the group on the corner by his house.  (***Id.*** at 20).  Police recovered a video from the corner store where the fight took

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

place between Appellant and Gibbons. (N.T. Trial, 4/16/15, at 8-10). This video showed Appellant and Gibbons in a fight, with Gibbons getting the better of Appellant. (*Id.* at 119). Gibbons also told the police that he heard Appellant tell co-defendant, Drevon Williams…, to go get the gun. (N.T. Trial, 4/13/15, at 31). However, Williams declined, saying, "No, that's Ty, he's cool." (*Id.* at 32). Although Appellant claimed to have gotten over the fight once it ended, the evidence showed that Appellant was still tweeting about the fight on Twitter at 9:42 pm and 9:44 pm that night. (N.T. Trial, 4/16/15, at 140-141). One of the tweets contained numerous icons of fists and guns. (*Id.* at 137-140).

At approximately 9:00 pm that night, Gibbons picked up his cousin, Justin Tift…, who had just come to Philadelphia from North Carolina to visit his grandmother in the hospital. (N.T. Trial, 4/7/15, at 12-13). The two men stopped at a liquor store and then at Checker's before going to another cousin, Deonte Barr's…, house at 7900 Fayette Street. (*Id.* at 13). Tift testified that while at Checker's, he saw Gibbons speaking to someone in a white Impala. (*Id.* at 15). Mr. Tift testified that they arrived at 7900 Fayette Street sometime after 10:00 pm. (*Id.* at 17).

Approximately thirty minutes before the shooting, a truck pulled up next to Gibbon['s] cousin, Barr, on the street. (N.T. Trial, 4/16/15, at 13). Appellant's friend and co-defendant, Williams, hopped out of the vehicle and asked Barr who was at his house. (*Id.*) Barr responded that only his mom was home. (*Id.* at 19). Barr could see the handle of a gun in Williams' waistband. (*Id.* at 17-19). Aware that a fight occurred earlier that day, Barr rushed home to warn his family. (*Id.* at 20, 22).

Tift testified that Barr returned to the house close to 11:00 pm and told them that "somebody grabbed him." (N.T. Trial, 4/7/15, at 17-19). Tift said that he and Gibbons went outside to look around and noticed a white Impala. (*Id.* at 17, 19). After about ten minutes, the Impala suddenly pulled off. (*Id.* at 20). About a minute later, Tift heard Gibbons say, "Run!" (*Id.* at 25). Gibbons made it safely back to the house, while Tift was shot ten times as he ran, falling in front of the steps of 7900 Fayette Street. (*Id.* at

25-26). Tift underwent several surgeries for his multiple gunshot wounds and was still undergoing rehabilitation at the time of the trial. (*Id.* at 27-31). The shooting left his right leg paralyzed. (*Id.* at 29). Tift testified that he is in constant pain in his right foot and knee. (*Id.* at 31).

Although Tift did not see who shot him, Gibbons told police that two males walked up on them and started shooting. (N.T. Trial, 4/13/15, at 16). Gibbons described one of the shooters as tall, thin build, dark skin with tattoos on his face. (*Id.* at 19, 21). Even though both shooters wore masks, he could see the distinct facial tattoos of Appellant. (*Id.* at 18, 31). Gibbons identified Appellant as the shooter and the same male that he engaged in a fist fight with earlier that day. (*Id.* at 31).

Appellant denied participation in the shooting and presented several alibi witnesses in his defense. One of the witnesses, Joan Seech, testified that she had known Appellant for many years. (*Id.* at 70). Ms. Seech testified that she was in her bedroom when she heard the gunshots. (*Id.* at 72). Initially, she testified that, after hearing the gunshots, she immediately went to her children's bedroom but did not see Appellant there. (*Id.* at 73). She testified that her children told her that Appellant had gone to see what had happened. (*Id.*) Ms. Seech later changed her testimony to say that Appellant was still in her home at the time of the shooting. (*Id.* at 83-90).

Sabrina Gray, Ms. Seech's daughter, claimed that Appellant was at her home all day, that he never left, and that he was with her in her room when the gunshots occurred. (*Id.* at 86-87). However, Ms. Gray was unable to explain how Appellant could have been at her home all day when a video showed him in a fight outside the corner store earlier that day. (*Id.* at 92-93).

Gerald Scott, who was present at the fist fight earlier in the day, testified that he was in Sabrina Gray's room with Appellant when they heard gunshots. (*Id.* at 98). Mr. Scott testified that he left with Appellant to see what had happened and was arrested. (*Id.* at 99). Mr. Scott refused to sign his statement to police. (*Id.* at 110-112).

(PCRA Court Opinion, 7/14/21, at 3-6) (record citation formatting altered; footnote omitted).

After a three-day non-jury trial, the court convicted Appellant on April 16, 2015, of two counts each of attempted murder, aggravated assault, conspiracy to commit aggravated assault, simple assault, and recklessly endangering another person, and one count each of firearms not to be carried without a license, carrying firearms in public, and possession of an instrument of crime. On July 23, 2015, the court sentenced Appellant to an aggregate term of 12 to 27 years of imprisonment. Appellant filed a timely notice of appeal, and this Court affirmed his judgment of sentence on May 15, 2017. *See Commonwealth v. Leamy*, 170 A.3d 1218 (Pa.Super. 2017) (unpublished memorandum). Appellant did not file a petition for allowance of appeal.

On February 16, 2018, Appellant filed a timely *pro se* PCRA petition. The court appointed counsel, who filed an amended PCRA petition on December 2, 2020. The court conducted an evidentiary hearing on April 29, 2021, after which it dismissed Appellant's petition. Appellant timely filed a notice of appeal on Tuesday, June 1, 2021, which was the day after the Memorial Day court holiday. On June 3, 2021, the court issued an order directing Appellant to file a Pa.R.A.P. 1925(b) statement. Appellant did not

comply with the order.[2]

      Appellant raises one issue for our review:

> Did the [PCRA] court err in dismissing [Appellant's] PCRA Petition after a hearing, where appellate counsel did not discover or raise on appeal an error of fact in the trial court's opinion, which the court relied on in part in reaching its finding of guilt?

(Appellant's Brief at 2) (footnote omitted).

      Preliminarily, we must discern whether Appellant waived this issue by failing to file a court-ordered Rule 1925(b) statement. "The complete failure to file the [Rule] 1925 concise statement is *per se* ineffectiveness because it is without reasonable basis designed to effectuate the client's interest and waives all issues on appeal." ***Commonwealth v. Burton***, 973 A.2d 428, 432 (Pa.Super. 2009). However, "this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal." ***Id.*** at 433. ***See also*** Pa.R.A.P. 1925(c)(3).

      Here, in its opinion, the PCRA court discusses the issue raised by Appellant in his PCRA petition, which encompasses the issue he has raised on appeal. (***See*** PCRA Court Opinion at 9-13). Accordingly, this Court may

---

[2] In his brief, Appellant's counsel admits that he "failed to put the current appeal on his schedule and failed to file a 1925(b) Statement of Matters Complained of on Appeal." (Appellant's Brief at 2 n.1).

decide the appeal on the merits.[3]

Appellant argues that appellate counsel was ineffective on direct appeal where counsel failed to discover an error made by the trial court in its recitation of the facts stated in the court's Rule 1925(a) opinion that preceded Appellant's direct appeal. Appellant asserts that the trial court misapprehended the evidence presented when it described the vehicle that approached Barr prior to the shooting as a white Impala rather than a black truck. Appellant insists that both the trial court and this Court relied on that misstatement as circumstantial evidence of Appellant's identity as the shooter. Given this error, Appellant claims appellate counsel was ineffective in failing to file a petition for allowance of appeal with the Supreme Court. Appellant avers that he asked appellate counsel to file a petition for allowance of appeal on his behalf, but counsel declined to do so. Appellant concludes appellate counsel rendered ineffective assistance, and this Court must reverse the order denying PCRA relief. We disagree.

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination

---

[3] The Commonwealth argues that Appellant also waived his claim on appeal by failing to ensure that the certified record contained a copy of the notes of testimony from the PCRA evidentiary hearing. (**See** Commonwealth's Brief at 6). Although the Commonwealth is correct that a copy of the hearing transcript was not included in the certified record, the hearing was transcribed, and we were able to make an informal inquiry and obtain the notes of testimony. Thus, we decline to find waiver on this ground.

and whether its decision is free of legal error. ***Commonwealth v. Conway***, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. ***Commonwealth v. Boyd***, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. ***Commonwealth v. Ford***, 44 A.3d 1190 (Pa.Super. 2012).

This Court has explained:

> [I]n presenting a PCRA claim of ineffective assistance of counsel for failing to file a requested petition for allowance of appeal, an appellant need not show that the petition would likely have been granted, but merely that the appeal was requested and counsel failed to act. [***See Commonwealth v. Liebel***, 573 Pa. 375, 383-384, 825 A.2d 630, 635 (2003)]. In these situations, the Supreme Court has effectively held that the prejudice prong of the test for ineffective assistance has been established *per se*. ***See id.***

> On the other hand, "[b]efore a court will find ineffectiveness of counsel for failing to file a direct appeal, the defendant must prove that he requested an appeal and that counsel disregarded that request." ***Commonwealth v. Knighten***, 742 A.2d 679, 682 (Pa.Super. 1999)[, *appeal denied*, 563 Pa. 659, 759 A.2d 383 (2000)]. Clearly, if a request to file a direct appeal is necessary to sustain an ineffectiveness claim based upon the failure to file a direct appeal, then such a request is also necessary where the alleged ineffectiveness is the failure to file a petition for allowance of appeal. ***Cf. Commonwealth v. Cooke***, 852 A.2d 340, 344 (Pa.Super. 2004) and ***Commonwealth v. Gadsden***, 832 A.2d 1082, 1088 (Pa.Super. 2003)[, *appeal denied*, 578 Pa. 162, 850 A.2d 611 (2004)] (directing PCRA court upon remand to determine whether appellant requested that petition for allowance of appeal be filed).

*Commonwealth v. Bath*, 907 A.2d 619, 622 (Pa.Super. 2006), *appeal denied*, 591 Pa. 695, 918 A.2d 741 (2007).

> Where no request has been made, an appellant must establish that a duty to consult was owed. Under *Roe* and *Touw*, an appellant may establish a duty to consult by indicating issues that had any potential merit for further review. *See Roe* [*v. Flores-Ortega*, 528 U.S. 470, 480, 120 S.Ct. 1029, 1036, 145 L.Ed.2d 985 (2000); *Commonwealth v. Touw*, 781 A.2d 1250, 1254 (Pa.Super. 2001)]. This does not require appellant to demonstrate that the Supreme Court would likely grant review to a petition for allowance of appeal, but only that appellant must show that any issue **rises above frivolity**.

*Bath, supra* at 623-24 (emphasis added).

Instantly, at the PCRA hearing, appellate counsel testified that he did not remember receiving a phone call or letter from Appellant asking him to file a petition for allowance of appeal on Appellant's behalf; if counsel had received such a request, counsel stated he would have honored it. (*See* N.T. PCRA Hearing, 4/29/21, at 24). Appellate counsel further explained that if he had known about the alleged "mistaken fact" cited by Appellant when advising Appellant not to file a petition for allowance of appeal, he "probably would have given him the same advice because [he did not] think the Superior Court actually relied on what we're talking about...in making its decision." (*Id.*)

In its opinion denying relief, the PCRA court explained that after evaluating testimony from Appellant and appellate counsel at the hearing, it did not find Appellant's testimony credible concerning Appellant's alleged request that counsel file a petition for allowance of appeal on Appellant's

behalf.  (**See** PCRA Court Opinion at 9).  Further, the PCRA court explained:

> The Superior Court relied on the copious amount of evidence that established Appellant's guilt.  Any mistake regarding what type of vehicle Drevon Williams exited when he approached Deonte Barr was insignificant considering the amount of compelling evidence of Appellant's guilt…. The Superior Court's analysis was based on the record, not the trial court's written opinion.  Appellant cannot show that the misidentification of a vehicle in the trial court's opinion prejudiced him and that the result of the direct appeal would have been different had appellate counsel pointed out the error….

(**Id.** at 13).

Our review of the record supports the court's determination that Appellant did not demonstrate that he requested counsel to file a petition for allowance of appeal on his behalf, and that counsel disregarded that request. Therefore, Appellant cannot establish *per se* ineffectiveness.  **See Bath, supra**.  Furthermore, regarding whether counsel had a duty to consult with Appellant about filing a petition for allowance of appeal, Appellant cannot establish that his issue "rises above frivolity" because, as discussed by the PCRA court, the mistaken fact on which Appellant relies was so insignificant considering the amount of compelling evidence of Appellant's guilt.  **See id.** Accordingly, we affirm the order denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/2022